# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSVALDO MELGAR,<br><br>                         Plaintiff,<br><br>         v.<br><br>PIE CHATACH 1776 LLC D/B/A PESCADA, ROVI COHEN and DAN MIZRACHI<br><br>                         Defendants. | Case No.: 23-cv-00917-BMC<br><br>**[PROPOSED] AMENDED COMPLAINT**<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

Plaintiff, by and through his attorneys, the Legal Aid Society and Fish & Richardson P.C., alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff Osvaldo Melgar ("Mr. Melgar")—an exemplary employee for nearly two years at the high-end restaurant Pescada—was illegally denied overtime pay.  Mr. Melgar was a diligent, hard-working, and loyal employee who took on extra tasks, and despite routinely working over 60 hours per week, was never paid the overtime he was due under the law.  As a result of Defendants' actions, Mr. Melgar suffered significant financial harm.

2.      Mr. Melgar's employers also subjected him to an unlawful scheme whereby a portion of his earned tips were diverted to Defendants without customers' knowledge in violation of the New York Labor Law.

3.      Things changed drastically for Mr. Melgar when he was involved in a serious traffic accident on the way to work and became disabled.  Defendants failed to pay him his earned and unused sick pay in violation of the law.

4. Defendants Rovi Cohen, Dan Mizrachi (the "Individual Defendants"), and Pie Chatach 1776 LLC d/b/a Pescada ("Pie Chatach," or collectively, "Defendants" or "Pescada") are liable for their willful and numerous violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), Articles 6, 12, and 19 of the New York Labor Law ("NYLL"), Part 146 of Title 12 of New York State Codes, Rules, and Regulation (i.e., New York State Hospitality Industry Wage Order) ("NYCRR 146") during the entire period of his employment.

## THE PARTIES

5. Plaintiff Osvaldo Melgar is an individual residing in Brooklyn, New York.

6. At all times relevant hereto, Plaintiff was employed by Defendants within the meaning of the FLSA and the NYLL. Mr. Melgar was employed as a runner, and his primary responsibilities included taking customers' orders, serving food, cleaning dishes, cleaning the establishment, moving equipment, and transporting ingredients, in and from a facility owned by Defendants in Brooklyn, New York.

7. Upon information and belief, Defendant Pie Chatach is a domestic limited liability company organized and existing under the laws of the State of New York that maintains its principal place of business at 1776 Ocean Ave., Brooklyn, NY 11230.

8. Upon information and belief, the Individual Defendants are the officers and principal owners, members, directors, supervisors, managing agents, and proprietors of the Pie Chatach, and conduct business in the State of New York.

9. Upon information and belief, Individual Defendants made material decisions concerning the day-to-day operations of the Pie Chatach, including those concerning pay practices and personnel decisions.

10. Defendants, individually and/or collectively, hired and fired Mr. Melgar, determined the scope of Mr. Melgar's job duties, determined his pay, determined his work schedule, and supervised his work.

11. Individual Defendants are sued in their individual capacity as Mr. Melgar's former employer.

12. Upon information and belief, Pie Chatach operated as a single restaurant enterprise, employing more than four employees and earning gross annual sales over $500,000, under the ownership and/or control of Individual Defendants.

13. Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 29 U.S.C. §§ 201 *et seq*. (FLSA) and 28 U.S.C. §§ 1331 (original federal question jurisdiction). This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy arising under Article III of the United States Constitution.

15. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391 because Defendants a substantial part of the events giving rise to the claims occurred within the Eastern District of New York and because Defendants operate their business therein. The Plaintiff also resides in the District.

## FACTUAL BACKGROUND

16. Mr. Melgar began working as a food runner for Pescada on or about June 20, 2020.

3

### *PESCADA RESTAURANT'S FAILURE TO PROVIDE ADEQUATE NOTICE TO PLAINTIFF REGARDING HIS EMPLOYMENT*

17. Defendants did not provide Mr. Melgar, at the time of hire or with every payment of wages, a notice or statement containing the information required by NYLL §§ 195(1) and (3), such as rate of pay and number of hours worked.

18. Defendants failed to notify Mr. Melgar, in writing, of the exact date of his termination as required by NYLL § 195(6).

### *PESCADA RESTAURANT'S FAILURE TO ADEQUATELY COMPENSATE PLAINTIFF FOR HIS OVERTIME WORK*

19. From June 20, 2020 to around March 2, 2022, when Mr. Melgar suffered serious injuries from a traffic accident while on his way to work, Mr. Melgar performed his job duties for Defendants, which went beyond the responsibilities of a typical runner, in a diligent and satisfactory manner. He took customers' orders, served food, cleaned dishes, cleaned the Defendants' restaurant establishment, moved equipment, transported food, and handled deliveries, among other tasks. He generally helped around the restaurant as needed.

20. Mr. Melgar typically worked for Defendants each week from Saturday, after sundown, through Thursday.

21. On Saturdays, Mr. Melgar regularly began working as early as around 6:30 p.m. and finished working after the close of dinner service, as late as around midnight.

22. On Sundays through Thursdays, Mr. Melgar regularly began working as early as around 10:30 a.m. and finished working after the close of dinner service, as late as around 11:00 p.m.

23. Mr. Melgar did not receive a designated break for rest or meals.

24. Mr. Melgar regularly worked more than forty (40) hours per week for Pescada during the period of his employment. Mr. Melgar routinely worked between fifty-five (55) and sixty-five (65) hours each work week.

25. Defendants paid Mr. Melgar a flat salary that fluctuated based on the number of days worked. Mr. Melgar's weekly flat salary for a full work week was usually $800.00 or $880.00 per work week but at times, was less or more.

26. Because Mr. Melgar did not receive pay stubs that listed the number of hours he worked, a requirement of NYLL 195(3), it was difficult to keep track of the amount of wages he was owed for each pay period, and to compare this against the payments he received from Defendant. This lack of clear information disempowered Mr. Melgar and delayed him from asserting his rights to recover unpaid wages.

27. As a result of not receiving notice at the time of hire that he was a non-exempt employee who was entitled to be paid hourly and to receive overtime premium pay, Mr. Melgar has been deprived of wages due to him based on the number of hours he worked for Defendant.

28. Defendants paid Mr. Melgar an additional amount that was labeled "CC Tips" on his paychecks, as he was serving customers and part of the tip pool at Pescada.

29. Despite Mr. Melgar's extensive overtime hours, which Defendants were aware of at least because Mr. Melgar clocked in and out on Defendants' computer system, Defendants failed to compensate Mr. Melgar for his overtime hours at the legally mandated overtime rate. Although Mr. Melgar regularly worked more than forty (40) hours each week, Defendants never paid Mr. Melgar at an overtime premium of 150% of his regular rate.

30. Mr. Melgar's paychecks listed a salary and credit card tips but did not include any amount as payment for cash tips. Likewise, with the exception of a few weeks, Mr. Melgar was not compensated for his overtime.

31. Thus, Mr. Melgar was intentionally and willfully denied overtime premium pay. Mr. Melgar's compensation was below the amount Defendants were legally required to pay for the hours he worked over forty (40) in a work week.

### *PESCADA RESTAURANT INTENTIONALLY MISDIRECTED PLAINTIFF'S GRATUITIES TO THEMSELVES*

32. Defendants' customers were charged an automatic gratuity of twenty (20) percent on all food and beverage purchases.

33. Upon information and belief, Defendants' customers frequently left additional cash tips for the service staff, which included Mr. Melgar.

34. During the entirety of Mr. Melgar's employment, he was not paid the additional cash tips left by customers and, upon information and belief, these cash tips were unlawfully retained by Defendants.

35. Mr. Melgar provided service to customers who came in and ordered from the menu (hereinafter the "regular customers") as well as to the customers attending banquets, special events and pre-planned parties (hereinafter "special events") at Pescada.

36. Upon information and belief, the special events happened frequently each week and were a major source of revenue for Defendants.

37. Upon information and belief, the special events customers signed contracts with Defendants that included a service charge and/or a gratuity.

6

38. Although Mr. Melgar provided service to the special events routinely, he did not receive any portion of the service charges or gratuities paid by the special events' customers or by the parties to the contracts regarding these special events.

39. Defendants' failure to pay Mr. Melgar all his earned tips was willful and done without the knowledge of Defendants' customers.

### *PESCADA RESTAURANT'S WRONGFUL DENIAL OF SICK PAY*

40. On or about March 2, 2022, Mr. Melgar was hit by a car while bicycling to work at Pescada. As a result of the accident, Mr. Melgar sustained serious injuries, including injuries to his leg and shoulder. As a result, Mr. Melgar was unable to walk or raise his arms and was disabled.

41. On the day of the accident, Mr. Melgar contacted Defendants and informed them that he sustained serious injuries and would be temporarily unable to work. On the same day or shortly thereafter, Mr. Melgar also sent photographs to Defendants showing his injuries, and requested paid sick leave.

42. Rather than engage in discussions with Mr. Melgar about accommodating his paid sick leave request, Defendants threatened to retaliate against Mr. Melgar if he asserted his legal rights, including in the form of reduced pay. At one point, Defendants' employee told Mr. Melgar to "keep your mouth shut," and "you're going to end up hurting yourself in the long run."

43. Thereafter, Mr. Melgar attempted multiple times to discuss his request for paid sick leave with Defendants.

44. Defendants failed to pay Mr. Melgar any sick pay although he was in the hospital and missed work due to his disability.

45. As a result of Defendants' refusal to provide paid sick leave and Defendants' threats of retaliation against Mr. Melgar for asserting his legal rights, Mr. Melgar had no other means of income at the time.

**FIRST CLAIM OF RELIEF**
(Overtime Wage Violations under the FLSA)

46. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

47. From about June 20, 2020 to about March 2, 2022, Plaintiff regularly worked for Defendants in excess of forty (40) hours per workweek.

48. At all times relevant hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiff at one-and-a-half times his regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep required records, all in violation of the FLSA. 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1).

49. Such violations by Defendants were willful and not in good faith.

**SECOND CLAIM OF RELIEF**
(Overtime Wage Violations under NYLL and
NYCRR 146)

50. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

51. From about June 20, 2020 to about March 2, 2022, Plaintiff regularly worked for Defendants in excess of forty (40) hours per workweek as a hospitality worker.

52. At all times relevant hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines

8

and rules of knowingly and willfully failing and refusing to pay Plaintiff at one and a half times his regular rate of pay for all hours of work in excess of forty (40) hours per workweek all in violation of the NYLL § 190, *et seq*. and NYCRR 146-1.4.

53. Such violations by Defendants were willful and not in good faith.

**THIRD CLAIM OF RELIEF**
(Failure to Provide Written Notice of Pay Rates, Tip
Credit, and Pay Day in Violation of NYLL § 195
and NYCRR 146)

54. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

55. NYLL § 195(1) required Defendants to provide Plaintiff, at the time of hiring, a notice listing, among other things, "rate or rates of pay and basis thereof," "the regular hourly rate and overtime rate of pay." Similarly, NYCRR § 146-2.2 required Defendants to provide Plaintiff with a statement, prior to the start of employment, listing "regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." At all times relevant hereto, Defendants failed to provide Plaintiff with all of the written information required by NYLL § 195(1) and NYCRR § 146-2.2, in violation of those laws.

56. NYLL § 195(3) required Defendants to provide Plaintiff with a statement, with every payment of wages, listing, among other things, "rate or rates of pay and basis thereof," "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." Similarly, NYCRR § 146-2.3 required Defendants to provide Plaintiff with a statement, with every payment of wages, listing, among other things, "hours worked, and rates paid." At all times relevant hereto, Defendants

9

failed to provide Plaintiff with all of the written information required by NYLL § 195(3) and NYCRR § 146-2.3, in violation of those laws.

57. As a result of those violations, Plaintiff is entitled to recover from Defendants, jointly and severally, damages of $250 for each workday that the violations occurred or continued to occur, up to $5,000, together with reasonable attorney's fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

58. Such violations by Defendants were willful and not in good faith.

### FOURTH CLAIM OF RELIEF
(NYLL Unpaid Spread-of-Hours)

59. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

60. Pursuant to 12 NYCRR § 146-1.6, Defendants had an obligation to compensate Plaintiff for one hour's pay at the minimum wage for each day he worked more than 10 hours.

61. Although Plaintiff regularly worked more than 10 hours in a day for Defendants, Defendants failed to compensate Plaintiff for one hour's pay at the minimum wage.

62. Such violations by Defendants were willful and not in good faith.

### FIFTH CLAIM OF RELIEF
(NYLL Failure to Pay Hourly Rate)

63. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

64. Pursuant to 12 NYCRR § 146-2.5, Defendants had an obligation to pay Plaintiff at an hourly rate of pay.

65. Defendants did not pay Plaintiff an hourly rate of pay, and instead paid him at a weekly salary.

66. Such violations by Defendants were willful and not in good faith.

### SIXTH CLAIM OF RELIEF
(Denial of Paid Sick Leave Under NYLL § 196-b)

67. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

68. By the conduct described above, Defendants denied Plaintiff the right to paid sick leave to which he was entitled under NYLL § 196-b.

69. Such violations by Defendants were willful and not in good faith.

### SEVENTH CLAIM OF RELIEF
(Withholding Gratuities in Violation of NYLL 196-d)

70. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

71. By the conduct described above, Defendants demanded or accepted, directly or indirectly, gratuities received by Plaintiff or retained part of gratuities purported to be for Mr. Melgar in violation of NYLL § 196-d.

72. Such violations by Defendants were willful and not in good faith.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Declare the Defendants violated the overtime provisions of the FLSA, declare that such violations were not in good faith and were willful, and award Plaintiff unpaid premium overtime, liquidated damages, and any other relief authorized under the FLSA;

b. Declare that Defendants violated the overtime provisions of the NYLL and New York Department of Labor Regulations, that such violations were not in good faith and were willful, and award Plaintiff unpaid premium overtime, liquidated damages, and any other relief authorized under the NYLL;

   c. Declare that Defendants violated NYLL § 195(1) and NYCRR § 146-2.2 in failing to provide Plaintiff, at the time of hiring, with written notice of hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday, as such violations were not in good faith and were willful, and award Plaintiff statutory damages and any other relief authorized under the NYLL;

   d. Declare that Defendants violated NYLL § 195(3) and NYCRR § 146-2.3 in failing to provide Plaintiff, with every payment of wages, a statement listing among other things rate of pay and overtime rate, that such violations were not in good faith and were willful, and award Plaintiff statutory damages and any other relief authorized under the NYLL;

   e. Declare that Defendants violated 12 NYCRR § 146-1.6 (i.e., NY's Unpaid Spread-of-Hours law), that such violations were not in good faith and were willful, and award Plaintiff unpaid compensation, liquidated damages, and any other relief authorized under the NYLL;

   f. Declare that Defendants violated 12 NYCRR § 146-2.5 for failing to pay Plaintiff on an hourly basis, that such violations were not in good faith and were willful, and award Plaintiff statutory damages, and any other relief authorized under NYLL;

   g. Declare that Defendants violated NYLL § 196-b for failure to provide paid sick leave, that such violations were not in good faith and were willful, and award Plaintiff earned sick leave, liquidated damages, and any other relief authorized under the NYLL;

   h. Declare that Defendants violated NYLL § 196-d for withholding gratuities, that such violations were not in good faith and were willful, and award Plaintiff compensation for withheld gratuities, liquidated damages, and any other relief authorized under the NYLL;

   i. Award Plaintiff compensatory damages in an amount to be determined at trial;

j. Award Plaintiff prejudgment interest;

k. Award Plaintiff reasonable attorneys' fees, costs, and expenses, including but not limited to remedies provided for under NYLL §§ 198 (1-b) and (1-d); and

l. Award Plaintiff such other relief as the Court deems just and proper.

New York, New York
April 4, 2023

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Michael F. Autuoro*

Michael F. Autuoro
Jeffrey C. Mok
Kyle J. Fleming
autuoro@fr.com
jmok@fr.com
kfleming@fr.com
**Fish & Richardson P.C.**
7 Times Square, Floor 20
New York, NY 10036
Tel: 212 765-5070
Fax: 212-258-2291

Twyla Carter, Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Elizabeth Saylor, Citywide Director, Employment Law Unit
Lizabeth Schalet, Of Counsel

**THE LEGAL AID SOCIETY**
199 Water Street, Fl. 3
New York, New York 10038
Telephone: (646) 574-7704
lschalet@legal-aid.org
esaylor@legal-aid.org

*Attorneys for Plaintiff Osvaldo Melgar*

13