

Fish & Richardson P.C.
7 Times Square
20th Floor
New York, NY 10036

212 765 5070 main
212 258 2291 fax

**Kyle J. Fleming**
Associate
kfleming@fr.com
+1 212 641 2214 direct

<u>**VIA ECF**</u>

January 9, 2024

Hon. James R. Cho, U.S.M.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*Re:    Melgar v. Pie Chatach 1776 LLC et al.*, Case No. 23-cv-00917-OEM-JRC

Dear Judge Cho:

    We along with our co-counsel, The Legal Aid Society, represent Plaintiff Osvaldo Melgar in the above referenced action.  We write jointly with counsel for Defendants Rovi Cohen and Raphael Treitel ("Settling Defendants") and respectfully submit this letter motion seeking approval of the negotiated Settlement Agreement in the instant action as it is fair and reasonable.

## I.    PROPOSED SETTLEMENT

    After extensive settlement negotiations, the parties and their counsel have determined that it is in the interest of the above-referenced parties to settle this matter and dismiss the Settling Defendants from this action in exchange for $35,000.  Plaintiff's counsel will waive attorneys' fees and costs it would otherwise be entitled to.  The attached Settlement Agreement reflects the parties' compromise to fully and finally settle Plaintiffs' claims as to the Settling Defendants and is the result of arm's-length bargaining between the parties.

## II.    FACTUAL BACKGROUND AND PARTIES' RESPECTIVE CLAIMS AND DEFENSES

Plaintiffs' Allegations

    Settling Defendants employed Plaintiff Osvaldo Melgar for nearly two years from early June 2020 to March 2, 2022 as a runner at their Brooklyn-based restaurant Pescada.  Mr. Melgar typically worked at Settling Defendants' restaurant for 55-60 hours per workweek.  Mr. Melgar was paid a flat salary as compensation and did not receive any written employment policies at the time of hire.  Settling Defendants failed to pay Mr. Melgar owed overtime compensation during his employment, to which he is entitled pursuant to the Fair Labor Standards Act ("FLSA").  Mr. Melgar also brings claims for various violations of the New York Labor Law ("NYLL"), including violations for withholding earned tips, denial of paid sick leave, failure to pay spread of hours pay, and failure to provide a complete statement of wages.



<u>Defendant's Position</u>

Defendants Cohen and Treitel strongly deny the allegations brought by the Plaintiff in this action and settles this action without admitting any allegations contained in the Plaintiff's complaint or amended complaint nor any calculations of Plaintiff's alleged damages therein. Defendant Treitel maintains that he was not and never has been an "employer" of the Plaintiff as defined in the FLSA, New York Labor Law (NYLL), or any of the relevant statutes and regulations that were plead or could have been plead by Plaintiff and was only an investor-owner who had no relationship with the Plaintiff (i.e. employer-employee). Defendant Cohen maintains that he was also not an employer under the law during the relevant time period of Plaintiff's allegations. Lastly, Defendants Cohen and Treitel sold their portions of the Defendant corporation (non-appearing) in January of 2021, thereby relieving them of any potential liability from that point forward, no matter the sum and substance of the Plaintiff's allegations, without admitting or conceding to the same.

Settlement was discussed with counsel and brokered in a conference with the Court, wherein settling Defendants believed it in their best interests to minimize the risks of trial, to stem the cost of litigation, and to ultimately put this litigation behind them. As such, they believe the settlement is fair as it accounts for the costs and risks of trial and allows finality that much sooner.

<u>Settlement Decision</u>

While the parties continue to differ in their respective positions as to the claims alleged, all parties recognize the risks associated with this litigation. During the settlement discussions, the parties evaluated the strengths and weaknesses of their respective positions and ultimately reached an agreement to settle the matter for $35,000. Plaintiff through discussions with his counsel about the strengths and weaknesses of his case, his likely recovery at trial, the time-value of money, and the degree of risk associated with this litigation, determined that it was fair and reasonable to receive $35,000.

## III.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), settlements that dismiss FLSA claims with prejudice require approval of the Court or the Department of Labor. The Court is required to "scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (citation and internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement and approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. One Hanover, LLC*, No. 13 CIV. 5184 AJP, 2014 WL 2567912, at *6 (S.D.N.Y. June 9, 2014) (citation and internal quotation marks omitted).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties



to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335-36. Based on these factors, the parties believe the settlement is fair and reasonable.

<u>Plaintiffs' Range of Possible Recovery</u>

Based on the allegations in the Amended Complaint, Plaintiff's counsel estimates Mr. Melgar's maximum approximate damages, including statutory and liquidated damages, as $178,860. However, Plaintiff's counsel estimates that Mr. Melgar's maximum compensation for his actual unpaid overtime damages as $106,860. If limited to damages incurred before January 1, 2021, Mr. Melgar's maximum compensation for his actual unpaid overtime damages are estimated at $24,360.

<u>Efficiency and Litigation Risks</u>

The principal issue in dispute is the time frame for which Settling Defendants would be personally liable for damages resulting from the failure to pay Mr. Melgar due overtime wages. Settling Defendants contend that on January 1, 2021, they sold the restaurant and therefore should not be held liable for damages stemming from activity after that date. Mr. Melgar does not concede the sale is valid, and further contends that, even if it was, Settling Defendants would still be liable for damages after that date due to their continued presence and management activities at the restaurant.

Plaintiff's counsel has weighed the strengths and weaknesses of their case in view of Defendants' contentions and the documents produced by Defendants in support. Although Mr. Melgar disagrees that Settling Defendants' liability would be cut short, Plaintiff's counsel has also considered that Mr. Melgar may not receive the full compensation he is owed if a Court or jury finds Settling Defendants more credible than Mr. Melgar.

Resolving this matter with the Settling Defendants clears the path for Mr. Melgar to pursue default judgments against the remaining parties, including Pie Chatach 1776 d/b/a Pescada, Dan Mizrachi, and Binyomin Minster (the "Defaulting Defendants"), who have each been served with summons and failed to answer or otherwise respond. Additionally, resolving this matter at this early stage eliminates risk for all parties and allows Mr. Melgar to receive money far sooner than if this matter were litigated through trial.

<u>Arm's-Length Negotiating and Risk of Possible Fraud or Collusion</u>

The proposed agreement represents significant arm's-length negotiations without fraud or collusion. Both parties are represented by competent counsel. A settlement related conference was conducted with the assistance of the court.

<u>Attorneys' Fees and Attorney Qualifications</u>



Plaintiff's attorneys, Fish & Richardson P.C. and The Legal Aid Society, are waiving all attorneys' fees and costs they would otherwise be entitled to.

Plaintiffs are represented by experienced counsel.  Lizabeth Schalet has been an employment law attorney for 31 years as both a partner in private practice as well as a Staff Attorney at The Legal Aid Society.  Michael Autuoro is the Managing Principal of the New York office of the law firm Fish & Richardson P.C. and has practiced law for 19 years.  Kyle J. Fleming has practiced law for three years.

## IV.    CONCLUSION

The parties respectfully request that the Court approve the Settlement Agreement in this matter as it contains fair, adequate, and reasonable terms.

Respectfully submitted,


*/s/  Kyle J. Fleming*
Kyle J. Fleming
Fɪsʜ & Rɪcʜᴀʀᴅsᴏɴ P.C.

*Attorney for Osvaldo Melgar*


By:  Kevin S. Johnson, Esq.
Johnson Litigation Group, P.C.
*Attorneys for Defendants Cohen and Treitel*